UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Docket No. |
| | : | 3:04 CR 320 (CFD) |
| OLIVER DUNCAN | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS FOR DENIAL OF DUE PROCESS AND FUNDAMENTAL UNFAIRNESS**

Defendant Oliver Duncan has been charged with violating 8 U.S.C. § 1326, which prohibits aliens previously deported from the United States from re-entering the country without permission from the Secretary of the Department of Homeland Security.  The indictment alleges that Duncan, a Jamaican citizen, was deported from the United States on July 25, 2002.  At some point thereafter, Duncan returned to the United States illegally, a fact discovered when he was arrested on August 25, 2004 by the Enfield, Connecticut police.  In November 2004, a federal grand jury returned an indictment charging Duncan with the instant offense.

Duncan argues that his 2002 deportation and the surrounding immigration proceedings were fundamentally flawed, as he never received a full and fair opportunity to present his claim that he had derived American citizenship through his mother.   He claims that as the original deportation was defective and based upon a denial of due process, the Government may not rely on it to establish one of the necessary elements of a § 1326 offense.  Therefore, Duncan argues, the indictment against him is deficient and must be dismissed.

**I.      Background**

Oliver Duncan was born out of wedlock on April 1, 1979 in Kingston, Jamaica to Paulette Graham. Graham subsequently married Duncan's father (also named Oliver Duncan) on August 7, 1982. In April 1983, Paulette Graham Duncan and her son emigrated to the United States, where they were admitted as lawful permanent residents.[1]

On January 15, 1997, Paulette Graham Duncan applied for U.S. citizenship. She listed her son Oliver Duncan, then aged 17 years and nine months, on her application.[2] Both Paulette and Oliver Duncan apparently believed that her timely application was sufficient to preserve Oliver's derived citizenship claim, even though Paulette's application was not approved and she did not take her oath of citizenship until after Oliver's eighteenth birthday.[3] According to the Duncans, no one at the Immigration and Naturalization Service ("INS") ever informed them that Oliver Duncan would not be considered to have automatically derived citizenship.[4]

---

[1] Oliver Duncan, Sr. apparently did not join them on this trip, and Oliver Duncan indicates that his parents separated in 1988, when he was nine years old.

[2] Pursuant to 8 U.S.C. § 1432, a minor child may derive American citizenship by virtue of a parent's naturalization. A child "ages out" and becomes ineligible for derived citizenship, however, if the parent's naturalization occurs after the child's eighteenth birthday.

[3] Paulette Graham Duncan's citizenship application was approved on August 1, 1997, when Oliver Duncan was 18 years and 4 months old. Paulette took her oath of citizenship and was naturalized on December 1, 1997, when Oliver was 18 years and 8 months old.

[4] On March 1, 2003, the INS was abolished and its functions transferred to three bureaus within the Department of Homeland Security. The immigration enforcement functions of INS were transferred to the Bureau of Immigration and Customs Enforcement ("BICE") within the Department of Homeland Security. Because the major events in this litigation occurred before the creation of BICE, the Court will continue to refer to the government agency as INS.

On July 27, 2000, the now-21-year-old Oliver Duncan was convicted of a Massachusetts state aggravated felony drug offense and sentenced to six months' imprisonment. Toward the conclusion of that sentence, the INS informed Duncan that it was commencing removal proceedings against him. Duncan was transferred to INS custody and held at a detention center in Oakdale, Louisiana.

Duncan applied for an N-600 certificate of citizenship on April 19, 2001, claiming that he was a derivative citizen due to his mother's application and that he was entitled to relief due to the INS' failure to process fully Paulette Graham Duncan's application before he had "aged out." When Duncan received no response to his citizenship application for seven months, he petitioned the United States District Court for the District of Massachusetts for a writ of mandamus ordering the INS to grant him derivative citizenship. Duncan filed his petition for mandamus on November 5, 2001. On November 27, 2001, the INS denied his application.

The INS proceeded with Duncan's removal proceedings, and on November 29, 2001, an Oakdale, Louisiana Immigration Judge ("IJ") ordered Duncan removed from the United States. Duncan then proceeded with a two-track appeal: on December 19, 2001, he appealed the decision denying his citizenship application to the INS Administrative Appeals Unit; simultaneously, Duncan appealed the IJ's deportation order to the Board of Immigration Appeals ("BIA"). The BIA affirmed Duncan's deportation on April 18, 2002. Duncan then tried to stay the BIA's order by filing a pro se motion for stay in the United States Court of Appeals for the First Circuit on May 15, 2002. The First Circuit transferred Duncan's motion to the Fifth Circuit on jurisdictional grounds; the Fifth Circuit then dismissed the motion on procedural grounds on July 19, 2002.

On July 25, 2002, Duncan was removed from the United States to Jamaica. At that point, his first appeal to the INS Administrative Appeals Unit was still pending. To this day, the INS has taken no action on Duncan's administrative appeal, contesting the agency's denial of his citizenship application.[5]

## II.  Legal Background

In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court established that a defendant may challenge the validity of a deportation order that underlies a charged violation of 8 U.S.C. § 1326. Although the legislative history of § 1326 contained no indication that Congress intended to allow collateral attacks on the validity of the underlying deportation, the Supreme Court nonetheless found that "[i]f the statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." Id. at 837 (emphasis original). Mendoza-Lopez elaborated that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." Id. at 837-38.

Subsequent to the Mendoza-Lopez decision, Congress enacted a new subsection to 8 U.S.C. § 1326. Section 1326(d) now provides that an alien seeking to challenge the validity of the deportation order serving as an element of the charged offense must "demonstrate that (1)

---

[5] On August 8, 2002, the District Court in Massachusetts, apparently unaware of the intervening events, dismissed his petition for a writ of mandamus. The district court suggested in its ruling that Duncan reopen his citizenship application and appeal its denial– the step Duncan had taken independently in December 2001 to no avail.

[he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." Id.

### III. Discussion

After reviewing the procedural history of Duncan's various legal proceedings, the Court concludes that he has met the requirements of 8 U.S.C. § 1326(d). First, Duncan effectively exhausted all administrative remedies available to him. He appealed the denial of his removal order to the Board of Immigration Appeals and simultaneously appealed the denial of his N-600 citizenship application to the INS Administrative Appeals Unit. Duncan's challenge to his removal revolves around the fact that, despite his timely appeal to the Administrative Appeals Unit, that division of the agency took no action on his appeal. Duncan was barred from seeking further administrative or judicial review once he was removed from the United States. See, e.g., United States v. Sosa, 387 F.3d 131, 137 (2d Cir. 2004) ("[A]fter [the defendant] left the country, further administrative and judicial review of his deportation was barred by former Section 106 of the [Immigration and Nationality Act.]"); see also 8 U.S.C. § 1105a(c) (1995); Illegal Immigrant Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, § 309(c), 110 Stat. 3009-546, enacted Sept. 30, 1996. The Court finds that Duncan expended all necessary efforts to exhaust his administrative remedies, and that any inaction by the INS may not be attributed to him as a failure to exhaust.

As to § 1326(d)'s second factor, the Court finds that the deportation proceedings at which Duncan's removal order was issued improperly deprived the alien of the opportunity for judicial

5

review.  Even if claims to derivative citizenship can be fully reviewed in removal proceedings, those claims were not reviewed in Duncan's removal hearings; it is apparent from the hearing transcript that the IJ was deferring to other ongoing proceedings (e.g., Duncan's pending mandamus petition in the District of Massachusetts) and declined to consider Duncan's arguments for derivative citizenship in a meaningful way.  See Doc. # 29 at Exhibits (Transcript of Nov. 29, 2001 removal proceedings).

Moreover, Duncan lacked any effective judicial review of his removal order.  As an aggravated felon, he lacked the right to file a direct appeal at the Circuit Court level.[6]  It was on this procedural ground that Duncan's appeal to the Fifth Circuit was denied.  The only judicial review available to Duncan was a petition for writ of habeas corpus.  The Second Circuit has held, however, that "where habeas review is technically available, judicial review will be deemed to have been denied if resort to a habeas proceeding was not realistically possible."  United States v. Copeland, 376 F.3d 61, 68 (2d Cir. 2004).  In Copeland, a period of two years between entry of the removal order and actual deportation was considered insufficient to make habeas review realistically possible.  Additionally, the Second Circuit found that "where no realistic opportunity for judicial review by way of habeas review existed, an alien's failure to seek such review will not be deemed to preclude a collateral attack on a deportation order under Section 1326(d)(2)."  Id. at 68-69.  Only three months elapsed between Duncan's final removal order (upon the BIA's denial of his appeal) and his deportation to Jamaica.  Under Copeland, this period of time was

---

[6] Such review was eliminated by the Antiterrorism and Effective Death Penalty Act and the Illegal Immigrant Reform and Immigrant Responsibility Act.  See 8 U.S.C. § 1101.

too short for habeas review "realistically possible." On the totality of the circumstances, Duncan effectively was denied judicial review.

Finally, the Court concludes that Duncan has satisfied § 1326(d)'s third factor and shown that the entry of his removal order and subsequent deportation, absent any substantive review of his derivative citizenship claim, was fundamentally unfair. Due process requires that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Mendoza-Lopez, 481 U.S. at 838. While not expressing any ultimate opinion on the merits of Duncan's claim, the Court finds that he is entitled to further and more complete review of that claim before his removal may be used against him in an indictment under 8 U.S.C. § 1326.

IV. Conclusion

The defendant's Motion to Dismiss for Denial of Due Process and for Fundamental Unfairness [Doc. #21] is GRANTED. The pending indictment against Duncan in this matter hereby is DISMISSED.

So ordered this 17th day of October 2005 at Hartford, Connecticut.

                /s/ CFD
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**